THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JANE DOE C.O. and JANE DOE S.D., <br><br> Plaintiffs, <br><br> vs. <br><br> UTAH VALLEY UNIVERSITY, DERRICK PICKERING, and JOHN DOES 1–10, <br><br> Defendants. | **ORDER GRANTING [22] UTAH VALLEY UNIVERSITY'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT AND DENYING AS MOOT [23] DERRICK PICKERING'S MOTION TO DISMISS** <br><br> Civil No. 2:24-cv-00669-DBB-DBP <br><br> Judge David Barlow |

Before the court is Utah Valley University's ("UVU") Motion to Dismiss ("UVU's Motion")[1] and Derrick Pickering's Motion to Dismiss ("Mr. Pickering's Motion").[2] For the reasons below, the court grants UVU's Motion and denies as moot Mr. Pickering's Motion.

## BACKGROUND[3]

Plaintiffs C.O. and S.D. allege that Mr. Pickering, an Advanced Practice Registered Nurse at UVU's Student Health Services, sexually assaulted them.[4] The allegations are as follows.

### Plaintiff C.O.

C.O. was a student attending UVU.[5] Around June 2016, C.O. was preparing to serve a religious mission.[6] As part of the preparation process, C.O. was required to complete a physical form.[7] C.O.'s understanding was that the physical required a doctor to "check several labs, her

---

[1] Def. Utah Valley Univ.'s Mot. to Dismiss and Mem. in Support ("UVU Mot."), ECF No. 22, filed Nov. 18, 2024.
[2] Derrick Pickering's Mot. to Dismiss ("Pickering Mot."), ECF No. 23, filed Nov. 18, 2024.
[3] In reviewing a motion to dismiss, the court "accept[s] the well-pleaded facts alleged as true and view[s] them in the light most favorable to the plaintiff." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023).
[4] *See generally* Compl. ¶¶ 51, 78, ECF No. 2, filed Sept. 12, 2024.
[5] *Id.* at ¶ 6.
[6] *Id.* at ¶ 11.
[7] *Id.* at ¶ 12.

weight, vitals, and a general check for any anomalies in her heart or lungs."[8] C.O. scheduled an appointment with the UVU Student Health Services to complete the form.[9]

When she arrived at the appointment, Mr. Pickering came into the room and said that he needed to check C.O.'s breasts and perform a pap smear.[10] C.O. explained that, based on her understanding, these examinations were not required for the physical.[11] Mr. Pickering told C.O. they were required and he would not sign her physical form if she did not complete them.[12] C.O. reiterated that she did not believe the examinations were necessary and that she did not want them performed.[13] But Mr. Pickering persisted, again stating he would not sign the physical form unless he performed the examinations.[14]

Mr. Pickering put a consent form in front of C.O. for the examinations.[15] C.O. felt confused and pressured.[16] However, she felt she had no option but to sign the form if she wanted to go on her mission.[17] C.O. signed the form.[18]

Mr. Pickering then purportedly performed the examinations, but he performed them in a way that left C.O. feeling confused, overwhelmed, violated, and like Mr. Pickering was doing something to her against her will.[19]

One year later, C.O. returned to the UVU Student Health Services for an unrelated visit.[20] At the appointment, C.O. told her health care provider, Esme, that she did not want a pap smear

---

[8] *Id.* at ¶ 15.
[9] *Id.* at ¶ 13.
[10] *Id.* at ¶ 16.
[11] *Id.* at ¶ 17.
[12] *Id.* at ¶ 18.
[13] *Id.* at ¶¶ 19, 21.
[14] *Id.* at ¶¶ 20–21, 23.
[15] *Id.* at ¶ 22.
[16] *Id.* at ¶ 24.
[17] *Id.* at ¶ 25.
[18] *Id.* at ¶ 26.
[19] *Id.* at ¶¶ 27–31.
[20] *Id.* at ¶ 37.

because she had already had the one that was required for her mission physical, and it was a very traumatic experience.[21] Esme informed C.O. that the pap smear was an optional part of the mission physical.[22]

When C.O. heard this, she started crying as she remembered how she felt being forced into having the examinations and how violated she felt.[23] Although C.O. did not fully appreciate the abuse she endured at this time, C.O. still felt like something was wrong.[24]

On February 8, 2018, C.O. reported the incident to the UVU police.[25] The investigating officer told C.O. that she did not have a claim.[26] The police report states:

> I asked [C.O.] to clarify what exactly she wished for our office to investigate regarding her complaint that I wasn't seeing a criminal matter. . . . After clarifying that nothing inappropriate took place during the exam constituting a criminal case and that [C.O.] was merely complaining that the exam should have never taken place, I referred her to contact the Director of Health Service. This was to assist [C.O.] in pursuing her complaint, as she was wishing to do. At this time[,] there is nothing criminal to investigate further involving our office.[27]

The investigating officer also noted that he spoke to Bill Erb, the Director of Student Health Services:

> I spoke to Bill Erb, who is the Director to Student Health Service. He stated that [C.O.] came in months ago and expressed that she was uncomfortable that the test was done. He was comfortable that his nurse practitioner followed established recommended professional medical guidelines after the consent was given.[28]

UVU then changed the disposition of the criminal complaint to "unfounded," and C.O. was told that what she experienced was just medical care.[29]

---

[21] *Id.* at ¶ 38.
[22] *Id.* at ¶ 39.
[23] *Id.* at ¶ 41.
[24] *Id.* at ¶ 42.
[25] *Id.* at ¶ 43.
[26] *Id.*
[27] *Id.*
[28] *Id.* at ¶ 44.
[29] *Id.* at ¶ 45.

*Plaintiff S.D.*

S.D. was a UVU student.[30] In 2018, S.D. went to the University Health Center for an appointment.[31] On the intake form, S.D. noted that she had been sexually assaulted several months earlier in Washington.[32]

Mr. Pickering was the health care provider for S.D.'s appointment.[33] Mr. Pickering talked with S.D., ordered a blood test, and refilled several prescriptions.[34] Mr. Pickering then commented that he noticed S.D. had stated that she had previously been sexually assaulted.[35] Mr. Pickering asked if S.D. had been tested for sexually transmitted diseases since the assault.[36] S.D. said she had not been tested, and Mr. Pickering told her he could perform the testing right then if she wanted.[37] Mr. Pickering "then stood up like [S.D] needed to decide right then or the appointment was over," so S.D. said "sure."[38]

Mr. Pickering then preformed a breast examination and pap smear. S.D. felt uncomfortable about the procedures when she left.[39] However, it was not until years later when S.D. had an examination by a different health care provider that S.D. realized how abnormal Mr. Pickering's examination was and how Mr. Pickering had touched her unnecessarily.[40]

---

[30] *Id.* at ¶ 55.
[31] *Id.* at ¶ 56.
[32] *Id.* at ¶¶ 57–58.
[33] *Id.* at ¶ 59.
[34] *Id.*
[35] *Id.* at ¶ 60.
[36] *Id.* at ¶ 61.
[37] *Id.* at ¶ 62.
[38] *Id.* at ¶ 63.
[39] *Id.* at ¶¶ 64–70.
[40] *Id.* at ¶ 74.

Later, S.D. saw a local newspaper's social media post, which detailed a Utah women's sexual assault by doctor.[41] The post also included a photo of UVU.[42] When S.D. saw the post, she realized that Mr. Pickering sexually abused her.[43]

Based on these allegations, in November 2024, C.O. and S.D. brought a Title IX claim against UVU and state law claims against UVU and Mr. Pickering.[44] UVU's Motion and Mr. Pickering's Motions are fully briefed.[45] Oral argument is not necessary to resolve the Motions.[46]

## STANDARD

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[47] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[48] The court does not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[49]

## DISCUSSION

The court begins by addressing whether Plaintiffs' Title IX claims are barred by the statute of limitations.

---

[41] *Id.* at ¶ 76.
[42] *Id.*
[43] *Id.* at ¶ 77.
[44] *Id.* at ¶¶ 81–122.
[45] Pls.' Opp'n to Utah Valley Univ.'s and Derrick Pickering's Mots. to Dismiss ("Opp'n"), ECF No. 31, filed Dec. 20, 2024; Def. Utah Valley Univ.'s Reply Mem. in Support of its Mot. to Dismiss ("UVU's Reply"), ECF No. 35, filed Jan. 17, 2025; Derrick Pickering's Reply Mem. in Support of Mot. to Dismiss, ECF No. 34, filed Jan. 17, 2025.
[46] DUCiv-R 7-1(g).
[47] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[48] *Id.*
[49] *Id.* at 678. UVU asserts that the court "lacks subject-matter jurisdiction over this suit because it is time barred," and moves to dismiss the case under 12(b)(1) and 12(b)(6). UVU Mot. 3. However, "[i]n the Tenth Circuit, the statute of limitations is an affirmative defense rather than a jurisdictional issue, and is properly challenged via a Rule 12(b)(6) motion." *Varnell v. Dora Consol. Sch. Dist.*, No. 12-CV-905 JCH/GBW, 2013 WL 12146483, at *2 (D.N.M. May 13, 2013). Accordingly, the court analyzes UVU's Motion under Rule 12(b)(6).

I.    **Plaintiffs' Title IX claims against UVU are barred by the statute of limitations.**

UVU asserts that Plaintiffs' Title IX claims are barred by the statute of limitations.[50] Plaintiffs argue that their Title IX claims are not barred because Utah's equitable discovery rule, which "may be invoked in response to a statute of limitations defense when the plaintiff was unaware of the facts underlying a cause of action because of the defendant's fraudulent concealment," tolled the applicable statute of limitations.[51]

To address these arguments, the court must determine (A) whether Utah's equitable discovery rule applies in these settings, and (B) if it does, whether Plaintiffs' claims are timely under the rule.

A.    **Utah's equitable discovery rule is applicable to Plaintiffs' Title IX claims.**

The parties dispute whether Utah's equitable discovery rule is applicable to Plaintiffs' Title IX claims. Whether Utah's equitable discovery rule is applicable turns on whether it is classified as an accrual or tolling doctrine. This is because the statute of limitations, and the tolling of the statute of limitations, for Title IX claims are determined by state law.[52] But accrual of Title IX claims is governed by federal law.[53]

In relevant part, Black's Law Dictionary defines "toll" as "to stop the running of."[54] That is, tolling causes a statute of limitations to pause after it has begun running. Black's Law Dictionary defines "accrual rule," however, as "delay[ing] the existence of a claim."[55] In other words, the statute of limitations is delayed and does not begin to run until a claim accrues.

---

[50] UVU's Mot. 4–5.
[51] *See generally* Opp'n 16–27; *Fitzgerald v. Spearhead Investments, LLC*, 493 P.3d 644, 652 (Utah 2021).
[52] *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212–13 (10th Cir. 2014).
[53] *Id.* at 1215.
[54] *Toll,* BLACK'S LAW DICTIONARY (12th ed. 2024).
[55] *Accrual Rule*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Plaintiffs describe Utah's equitable discovery rule as operating to toll the statute of limitations.[56] UVU categorizes Utah's equitable discovery rule as an accrual doctrine and asserts that because federal law governs the accrual of Title IX claims, Utah's equitable discovery rule is inapplicable.[57] UVU relies on *Varnell v. Dora Consolidated School District* for this argument.[58]

In *Varnell*, a student from New Mexico was sexually abused by her coach.[59] When the student turned 20, she brought a Title IX claim against the coach, the school, and the school's superintendent.[60] The plaintiff argued that under the federal discovery rule, "which delays accrual of a claim until the plaintiff knew or should have known the facts necessary to establish her cause of action," her cause of action did not accrue until she "realize[d] the extent of her psychological injury . . . shortly before filing suit."[61] In conducting its analysis, the Tenth Circuit treated the federal discovery rule as an accrual doctrine, not a tolling provision.[62]

Although *Varnell* treated the federal discovery rule as an accrual doctrine, the case is distinguishable for several reasons. First, *Varnell* was analyzing the federal discovery rule, not Utah's equitable discovery rule.[63]

Second, in *Varnell*, the plaintiff separately argued that under New Mexico law, the limitations period is tolled if the plaintiff demonstrates they were not aware of their claim due to the defendant's fraudulent concealment.[64] The New Mexico rule analyzed by the *Varnell* court is

---

[56] *See generally* Opp'n 19–22.
[57] UVU Reply 6–8.
[58] *Varnell*, 756 F.3d 1208.
[59] *Id.* at 1210–11.
[60] *Id.* at 1210.
[61] *Id.* at 1216.
[62] *Id.* at 1215–17.
[63] *Id.* at 1216; *Varnell v. Dora Consol. Sch. Dist.*, Case No. 12-CV-905 JCH/GBW, Appellant's Opening Brief 7, ECF No. 23-1, filed Oct. 16, 2013.
[64] *Varnell*, 756 F.3d at 1214–15.

similar to Utah's discovery rule.[65] And the Tenth Circuit determined that New Mexico's rule was "a general tolling provision" that was applicable to the plaintiff's claims.[66]

Third, in caselaw since *Varnell*, the Tenth Circuit has referred to Utah's equitable discovery rule as a tolling provision, not an accrual doctrine.[67]

And lastly, the Utah Supreme Court repeatedly categorizes Utah's equitable discovery rule as a tolling provision. For example, the Utah Supreme Court has said that the "equitable discovery *tolls* a statute of limitations"[68] and the rule "benefits a plaintiff by operating to *toll* the period of limitations,"[69] among other numerous examples.[70]

Based on the foregoing, Utah's equitable discovery rule is a tolling provision that is applicable to Plaintiffs' claims.

---

[65] *Compare id.* (explaining New Mexico's discovery rule)*, with Hunter v. Finau*, 545 P.3d 294 (Utah Ct. App. 2024) (explaining Utah's equitable discovery rule).

[66] *Varnell*, 756 F.3d at 1215.

[67] *Bistline v. Parker*, 918 F.3d 849, 880 (10th Cir. 2019) (labeling a subsection of its opinion "Tolling Through the Discovery Rule," and stating "[w]e will . . . address the pertinent statutes of limitations, viable avenues for *tolling* the limitations periods, and the application of *tolling* to specific plaintiffs"; "[w]e must also apply Utah's *tolling* rules"; and "the fraudulent concealment doctrine thus may operate to *toll* the limitations periods"; among other examples (emphases added)).

[68] *Fitzgerald*, 493 P.3d at 648 (emphasis added).

[69] *Snow v. Rudd*, 998 P.2d 262, 265 (Utah 2000) (emphasis added) (internal quotations omitted).

[70] *See, e.g., Walker Drug Co., Inc. v. La Sal Oil Co.*, 902 P.2d 1229, 1231 (Utah 1995) (describing the requirements "[b]efore a period of limitations may be *tolled* under . . . the discovery rule" (emphasis added)); *Berenda v. Langford*, 914 P.2d 45, 55–56 (Utah 1996) ("[T]he question before this court was whether the discovery rule should apply to *toll* an otherwise statutorily fixed limitations period." (emphasis added)); *Berneau v. Martino*, 223 P.3d 1128, 1135–36 (Utah 2009) (describing the showing a plaintiff must make "before a statute of limitations may be *tolled*" under the equitable discovery rule and holding that "exceptional circumstances exist to warrant application of the equitable discovery rule to *toll* [the section's] three-year limitations period" (emphasis added)); *Fitzgerald*, 493 P.3d at 649 ("Though equitable estoppel and equitable discovery both operate to *toll* statutes of limitations . . . ." (emphasis added)); *Ockey v. Lehmer*, 189 P.3d 51, 60 (Utah 2008) ("The equitable discovery rule operates to '*toll* a statute of limitations . . . .'"(emphasis added)); *Russell Packard Dev. Inc. v. Carson*, 108 P.3d 741 (Utah 2005) ("[W]e have acknowledged two narrow settings in which a statute of limitations may be *tolled* [under the discovery rule]." (emphasis added)).

UVU asserts that while Utah might classify the discovery rule as tolling principle, under federal law, it is an accrual doctrine. However, federal caselaw does not consistently refer to the discovery rule as an accrual doctrine. *See generally Alexander v. Oklahoma*, 382 F.3d 1206 (10th Cir. 2004) (applying Oklahoma's discovery rule in a § 1983 case and classifying it as a tolling provision).

**B.    Plaintiffs' claims are barred by the statute of limitations despite applying Utah's Equitable Discovery Rule.**

"As a general rule, a statute of limitations begins to run 'upon the happening of the last event necessary to complete the cause of action.'"[71] However, the equitable discovery rule operates to toll the statute of limitations in narrow circumstances.[72] The rule has two branches. One branch applies when "a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct" (the fraudulent concealment branch).[73] The second branch applies "where the case presents exceptional circumstances[,] and the application of the general rule would be irrational or unjust" (the exceptional circumstances branch).[74] Plaintiffs only assert that the fraudulent concealment branch applies, so the court focuses its analysis on that branch.

To toll the statute of limitations under the fraudulent concealment branch, a plaintiff must satisfy two elements: "(1) the plaintiff must make a prima facie showing of fraudulent concealment and then (2) must demonstrate that, given the defendant's actions, a reasonable plaintiff would not have discovered his or her claim earlier."[75] Because the second element is dispositive, the court starts its analysis there.

To satisfy the second element, which focuses on the reasonableness of a plaintiff's actions, the plaintiff must demonstrate either that: "(1) the plaintiff neither knew nor reasonably

---

[71] *Russell Packard Dev. Inc.*, 108 P.3d at 746.

[72] *Hunter*, 545 P.3d at 304; *Russell Packard Dev. Inc.*, 108 P.3d at 746 ("[W]e have acknowledged two narrow settings in which a statute of limitations may be tolled until the discovery of facts forming the basis for the cause of action." (internal quotations omitted)).

[73] *Hunter*, 545 P.3d at 305 (quoting *Russell Packard Dev.*, 108 P.3d at 747).

[74] *Id.* (quoting *Russell Packard Dev.*, 108 P.3d at 747). Before the statute of limitations may be tolled under the fraudulent concealment branch or exceptional circumstances branch, "the plaintiff must make an initial showing that he did not know nor should have reasonably known the facts underlying the cause of action in time to reasonably comply with the limitations period." *Berneau*, 223 P.3d at 1134–35; *see also Hunter*, 545 P.3d at 305 ("Both branches require a showing that 'the plaintiff neither discovered nor reasonably should have discovered the facts underlying the cause of action before the limitations period expired.'").

[75] *Bistline*, 918 F.3d at 884.

should have known of the underlying facts before the fixed limitations period expired; or (2) notwithstanding the plaintiff's actual or constructive knowledge before the limitations period expired, a reasonably diligent plaintiff would have delayed in filing."[76]

Here, Plaintiffs rely on the former of these options that they "neither knew nor reasonably should have known of the underlying facts before the fixed limitations period expired." The focus of this inquiry is when C.O. and S.D. knew or reasonably should have known of the *facts* forming the basis of a cause of action.[77]

With respect to C.O.'s Title IX claim, C.O. argues that it took time for her to process and understand that Mr. Pickering had sexually assaulted her.[78] In June 2016, when Mr. Pickering performed the examinations, C.O. states that even though she knew something was wrong, she did not realize that Mr. Pickering was not providing medical care.[79] In roughly 2017, when Esme told C.O. that a pap smear was not required, C.O. states that she still did not fully appreciate that Mr. Pickering abused her.[80] And in 2018, when C.O. informed UVU police and the Director of the Student Health Services, UVU's statements that C.O.'s claims were unfounded further dissuaded her suspicions that she was abused.[81] Accordingly, because of the time it took C.O. to "process[] the trauma and heal[] to the point that she appreciated that what she experienced was

---

[76] *Id.* at 884 n.16.
[77] *See, e.g., Russell Packard Dev., Inc.*, 108 P.3d at 746 ("[W]e have acknowledged two narrow settings in which a statute of limitations may be tolled until the discovery of *facts* forming the basis for the cause of action." (emphasis added) (internal quotations omitted)); *Ockey*, 189 P.3d at 60 ("The equitable discovery rule operates to toll a statute of limitations until the time at which a party discovered or reasonably should have discovered *facts* forming the basis for the cause of action." (emphasis added) (internal quotations omitted); *Bistline*, 918 F.3d at 880 ("The question of when a plaintiff reasonably would have discovered the *facts* underlying a cause of action in light of a defendant's affirmative concealment is a highly fact-dependent legal question . . . ." (emphasis added) (quoting *Russell Packard Dev., Inc.*, 108 P.3d at 750)).
[78] Opp'n 22.
[79] *Id.* at 23.
[80] *Id.* at 23–24.
[81] *Id.*

sexual abuse," C.O. asserts that the statute of limitations for her Title IX claim "did not begin to run until shortly before January 2024."[82]

UVU responds that C.O.'s claims are barred because she was aware of the facts giving rise to the cause of action by 2018, at the latest, when C.O. reported Mr. Pickering to UVU police and UVU's Director of Student Health Services.[83]

Utah's equitable discovery rule focuses on when C.O. was aware of the *facts* underlying the claim, not when she processed the trauma she suffered. And in this instance, C.O. was aware of the facts underlying her Title IX cause of action by 2018, at the latest, when she reported Mr. Pickering's conduct to UVU police and UVU's Director of Student Health Services. This means, that based on the four-year statute of limitations period,[84] the statute of limitations for C.O.'s claim expired no later than 2022. Because C.O. did not file suit until 2024, her Title IX claim is barred.

S.D. advances similar arguments to C.O. and asserts that she did not process the trauma of the sexual assault and realize that she was assaulted until she saw the newspaper's social media post.[85] UVU asserts that S.D.'s was aware of the facts underlying her claim in 2018 when she was seen by Mr. Pickering.[86]

S.D.'s arguments fail for the same reasons as C.O.'s arguments: Utah's equitable discovery rule is not tolled based on the timeline of when the plaintiff processes trauma. Instead, it is tolled until the plaintiff is aware of the facts underlying the claim. For S.D., the statute of limitations began to run in 2018 after her appointment with Mr. Pickering. Based on the four-

---

[82] *Id.* at 22–25.
[83] UVU Reply 7 n.7, 8–9.
[84] Because Title IX "lacks its own limitation period, federal courts apply the forum state's general statute for personal injury claims. In Utah, that general limitations period is four years." *Doe v. Nebo Sch. Dist.*, 733 F.Supp.3d 1139, 1149 (D. Utah 2024); Utah Code § 78B-2-307(4).
[85] Opp'n 26–27.
[86] UVU Reply 9–10.

year statute of limitations, S.D.'s claim ran in 2022. Because S.D. did not file suit until 2024, her Title IX claim is barred.

Plaintiffs further assert that their Title IX claim cannot be dismissed on statute of limitations grounds because determining when Plaintiffs reasonably would have discovered the facts underlying their Title IX claim is fact dependent and not fit to be adjudicated as a matter of law.[87]

Plaintiffs are correct that "[t]he question of when a plaintiff reasonably would have discovered the facts underlying a cause of action in light of a defendant's affirmative concealment is a highly fact-dependent legal question."[88] The fact-intensive nature of this inquiry generally

> preclud[es] [summary judgment or dismissal] in all but the clearest of cases, i.e., when the facts fall on two opposite ends of a factual continuum. These include situations in which either (1) the facts are so clear that reasonable persons could not disagree about the underlying facts or about application of the governing legal standard to the facts, or (2) the facts underlying the allegation of fraudulent concealment are so tenuous, vague, or insufficiently established that the claim fails as a matter of law.[89]

After accepting the well-pleaded facts alleged as true and viewing them in the light most favorable to the Plaintiffs, this case consists of one where "the facts are so clear that reasonable persons could not disagree about the underlying facts or the application of the governing legal standard to the facts." This is because, as discussed, the focus of Utah's equitable discovery rule is when a "plaintiff reasonably would have discovered the *facts* underlying a cause of action." This analysis does not take into account when Plaintiffs fully understood their injury and trauma. So although C.O. and S.D. aver that they did not appreciate the gravity of the sexual assault, by

---

[87] Opp'n 20–22.
[88] *Bistline*, 918 F.3d at 880 (quoting *Russell Packard Dev., Inc.*, 108 P.3d at 750).
[89] *Id.* (quoting *Russell Packard Dev., Inc.*, 108 P.3d at 750–51).

their own allegations in the complaint, they were aware of the facts underlying their Title IX claims as the events occurred because they were present as the facts took place. For example, C.O. was present during the exam, she was present when she learned that the pap smear was not required, and she was present when UVU dismissed her concerns about the sexual assault. C.O. did not need to discover these facts because they happened directly to her and in her presence. So too for S.D.

In short, under Utah law, the equitable discovery rule simply does not apply to plaintiffs who were aware of the facts underlying their claims, even if those plaintiffs were unaware that the facts might constitute a legal claim. Based on the foregoing, C.O. and S.D.'s Title IX claims are barred by the statute of limitations.[90]

## II. The court declines to exercise jurisdiction over Plaintiffs' state-law claims.

Under 28 U.S.C. § 1367, a federal district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."[91] The Tenth Circuit has held that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining claims."[92]

The only claims over which this court had original jurisdiction were Plaintiffs' Title IX claims. However, now that the court has dismissed that claim, only state law claims remain. The court declines to exercise supplemental jurisdiction over those state law claims.

---

[90] Because the Title IX claims are barred by the statute of limitations, the court does not reach UVU's other arguments regarding those claims.
[91] 28 U.S.C. § 1367 (c)(3).
[92] *Smith v. City of Enid By and Through Enid City Commission*, 149 F.3d 1151, 1156 (10th Cir. 1998).

**CONCLUSION**

For the reasons stated, the court GRANTS Utah Valley University's Motion to Dismiss[93] and DENIES AS MOOT Derrick Pickering's Motion to Dismiss.[94]

Because the statute of limitations has run on Plaintiffs' Title IX claims, and the Plaintiffs have failed to show that a tolling provision applies, any attempt by Plaintiffs to amend their complaint would be futile.[95] As a result, Plaintiffs' Title IX claims against Utah Valley University are dismissed with prejudice. All remaining claims are dismissed for lack of jurisdiction.

Signed April 21, 2025

BY THE COURT:

_____
David Barlow
United States District Court Judge

---

[93] ECF No. 22.

[94] ECF No. 23.

[95] Plaintiffs do not rely on the exceptional circumstances branch of Utah's equitable discovery rule in their Motion. However, any argument under this branch would also fail because "before a statute of limitations may be tolled under [the fraudulent concealment or equitable circumstances branch], the plaintiff must make an initial showing that he did not know nor should have reasonably known the facts underlying the cause of action in time to reasonably comply with the limitations period." *Berneau*, 223 P.3d at 1134–35; *see also Hunter*, 545 P.3d at 305 ("Both branches require a showing that 'the plaintiff neither discovered nor reasonably should have discovered the facts underlying the cause of action before the limitations period expired.'").